Mark G. **MINNIS**, Plaintiff-Appellee,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,
Defendants-Appellants.**

Nos. 83–4089, 83–4209.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1984.

Decided May 22, 1984.

As Amended on Denial of Rehearing and Rehearing En Banc July 18, 1984.

Jeffrey B. Withol, Cooney & Crew, Portland, Or., Michael Axline, Eugene, Or., for plaintiff-appellee.

Al J. Daniel, Jr., Atty., Dept. of Justice, Washington, D.C., for defendants-appellants.

Before SCHROEDER, FARRIS, and REINHARDT, Circuit Judges.

SCHROEDER, Circuit Judge.

Mark G. Minnis owns a commercial lodge on the bank of the Rogue River in Oregon. He filed this action under the Freedom of Information Act, 5 U.S.C. § 552 (1982) (FOIA), to compel the Forest Service to disclose the names and addresses of all persons who applied for permits to travel on the Rogue River during the 1983 regulated season. The Rogue River is a designated wild and scenic river under the Wild and Scenic Rivers Act of 1968, 16 U.S.C. §§ 1271–1287 (1982), and the Forest Service restricts traffic on it between Memorial Day and Labor Day by requiring all persons to obtain permits through a random computer lottery. Approximately 9,370 people applied for permits for the 1983 regulated season, and 639 permits were awarded.

The Forest Service denied Minnis's request for the permit applicant list on the basis that disclosure would violate the privacy exemption to FOIA, 5 U.S.C. § 552(b)(6). Minnis then filed this action. The district court concluded, on the basis of facts that were not materially disputed,

that. there was a strong public interest in Minnis informing permit applicants about available accommodations on the River, and that release of the list to Minnis would entail no more than a minimal invasion of privacy. It ordered disclosure plus an award of attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E). We stayed action pending this appeal and now reverse because we conclude that disclosure would confer no discernible public benefit and would entail more than a minimal invasion of privacy.

 FOIA's privacy exemption applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To fall within the exemption, the information requested must be contained in a personnel, medical, or similar file. The Supreme Court has defined "similar file" broadly as government records containing "information which applies to. a particular individual." *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982).[1] *See Washington Post Co. v. United States Department of Health and Human Services*, 690 F.2d 252, 260 (D.C.Cir.1982). Lists of names and addresses meet this definition. *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270 at 1272 (9th Cir.1984); *see also Wine Hobby USA, Inc. v. United States Internal Revenue Service*, 502 F.2d 133, 135 (3d Cir.1974). The issue here, therefore, is whether release of the information requested would be a clearly unwarranted invasion of personal privacy. *United States Department of State v. Washington Post Co.*, 456 U.S. at 602, 102 S.Ct. at 1961.

 To determine whether an invasion of privacy is clearly unwarranted, this court balances four factors: (1) the plaintiff's interest in disclosure; (2) the public interest in disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternate means of obtaining the requested information. *Van Bourg, Allen, Weinberg & Roger v. NLRB*, at 1272; *Church of Scientology of California v. United States Department of the Army*, 611 F.2d 738, 746 (9th Cir.1979). Even though we construe exemptions from FOIA disclosure narrowly, *Department of the Air Force v. Rose*, 425 U.S. 352, 361–62, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), the balance here weighs against release of the information.

Minnis's principal interest in obtaining the permit applicant list is purely commercial in character. He wants to advertise his lodge to people who are interested in visiting the Rogue River. At least one other circuit has considered such a commercial interest in the context of the privacy exemption. *Wine Hobby USA, Inc. v. United States Internal Revenue Service*, 502 F.2d 133 (3d Cir.1974). In *Wine Hobby*, a distributor of wine-making equipment requested the names and addresses of persons registered with the United States Bureau of Alcohol, Tobacco and Firearms to produce wine for family use. The court denied the request, reasoning that Con-

---

1. Minnis filed an action for the list of all permit recipients prior to *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). The district court in the earlier action ordered disclosure on the basis that names and addresses were not a "similar file." Minnis's argument that the Forest Service is collaterally estopped from relitigating the "similar file" issue, however, lacks merit. It has long been the rule in this circuit that an intervening Supreme Court decision clarifying an issue that had been uncertain in the lower courts defeats collateral estoppel. *See Segal v. American Telephone & Telegraph Co.*, 606 F.2d 842, 845–46 (9th Cir.1979).

Minnis also suggests that the Forest Service is collaterally estopped from relitigating the "clearly unwarranted" issue. The district court in the earlier action did note its view that disclosure of the list of all permit recipients would not be clearly unwarranted. However, the district court also recognized that it was unnecessary for it to address that issue. Because the district court's expression of its view regarding the issue was dictum, the Forest Service is not collaterally estopped from relitigating the "clearly unwarranted" question. Moreover, the earlier question pertained to permit recipients while the issue before us relates to permit applicants. For that reason also, collateral estoppel is inapplicable.

gress did not intend FOIA to allow the disclosure of names of potential customers to commercial businesses. *Id.* at 137. The court concluded that, absent any asserted public interest in disclosure, a commercial interest would not justify the invasion of privacy. *Id. See also HMG Marketing Associates v. Freeman,* 523 F.Supp. 11, 14 (S.D.N.Y.1980) (list of people who ordered specially minted silver dollars exempt from disclosure to direct mail advertiser because court "hard pressed" to discern any public interest in advertiser's acquisition of the mailing list).

■ We agree with the Third Circuit that commercial interest should not weigh in favor of mandating disclosure of a name and address list. Congress designed FOIA "to ensure an informed citizenry ... needed to check against corruption and to hold the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978), and "to open agency action to the light of public scrutiny." *Department of the Air Force v. Rose,* 425 U.S. at 361, 96 S.Ct. at 1599. FOIA was not intended to require release of otherwise private information to one who intends to use it solely for personal gain.

Minnis attempts to distinguish *Wine Hobby* by arguing that disclosure of the list would benefit the public in two ways: first, because it would inform interested people of available accommodations on the River; and second, because the list would allow Minnis to verify the fairness of the permit lottery system.

In assuming that the public would benefit from the receipt of his direct mail advertising, Minnis ignores the possibility that some members would be irritated rather than enlightened by unwanted solicitations. *See Rowan v. United States Post Office Department,* 397 U.S. 728, 736, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970). Moreover, Minnis can communicate his lodge's availability to those who are interested by advertising in speciality publications, contacting local Chambers of Commerce, or obtaining a listing in the telephone yellow pages. Thus, he has not shown that government disclosure of this list is needed to inform the interested public. Use of the list for advertising purposes confers no public benefit weighing in favor of disclosure.

■ Minnis is on stronger ground in arguing that there is a public benefit in allowing outside scrutiny of the permit lottery's fairness. *See Department of the Air Force v. Rose,* 425 U.S. at 360–62, 96 S.Ct. at 1598–99; *EPA v. Mink,* 410 U.S. 73 (1973). The difficulty is, however, that the information Minnis seeks would not further such an objective. The Forest Service submitted an uncontradicted affidavit that disclosure of names and addresses alone would not enable Minnis to assess the fairness of the lottery; he also would need other information, including the size of the parties, the types of craft, and the dates requested. Minnis has not asked the Forest Service for this information. The district court itself observed that Minnis had not explained how disclosure would help him oversee the lottery's fairness. Thus, we must conclude that there is little or no public interest served by disclosure of the information sought.

Against the asserted private and public interest in disclosure, which is negligible, we must balance the degree of invasion of the permit applicants' privacy interests. Disclosure would reveal not only the applicants' names and addresses, but also their personal interests in water sports and the out-of-doors. *See Wine Hobby,* 502 F.2d at 137. Other commercial advertisers could obtain the list, subjecting the applicants to an unwanted barrage of mailings and personal solicitations. *Id. See American Federation of Government Employees Local 1923 v. United States Department of Health and Human Services,* 712 F.2d at 931, 932 (4th Cir.1983). Thus, contrary to the district court's conclusion, disclosure would implicate more than a minimal privacy interest. Indeed, this court recently recognized the privacy interest in a name and address list in *Van Bourg, Allen, Weinberg & Roger v. NLRB, supra,* involving a

rival union's request for the list of eligible voters in a representation election. Slip op. 728 F.2d at 1270. In allowing disclosure, this court emphasized that the parties to the election already had a copy of the list, slip op. at 1491, and that the public would benefit from ensuring the fairness of union elections. *Id.* The factors militating in favor of disclosure in that case do not exist here.

While we note that Minnis has no alternative means for obtaining the exact list he requests, *Church of Scientology of California,* 611 F.2d at 746, this factor alone is not determinative, particularly since alternative means exist to further the commercial interest for which the information is sought. Minnis's interest in obtaining the list is commercial; no discernible public benefit would result from disclosure; and more than a minimal privacy interest is involved. We conclude that the invasion of privacy here is "clearly unwarranted." 5 U.S.C. § 552(b)(6). Accordingly, we reverse the judgment of the district court and the award of attorney fees to plaintiff.